# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77732-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| NICHOLAS P. BAJARDI, | ) | |
| | ) | FILED: April 16, 2018 |
| Appellant. | ) | |
| | ) | |

2018 APR 16 AM 8:55

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

VERELLEN, J. — The State charged Nicholas Bajardi with violation of a no contact order against Erin Roblin. The Thurston County Superior Court admitted a certified copy of Roblin's driver's license as a self-authenticating business or public record. Because the driver's license contains facts, not conclusions involving the exercise of judgment or discretion or expression of opinion, and the State presented the required documentation to prove the license's authenticity, the trial court did not abuse its discretion.

Additionally, Bajardi challenges the sufficiency of the evidence supporting his conviction for violating a no contact order. But viewed in a light most favorable to the State, there was sufficient evidence that there was a valid no contact order prohibiting him from having contact with Roblin, he knowingly

contacted her, and at the time of contact with Roblin, he had twice been convicted of violating a no contact order.

The trial court found Bajardi indigent. Because nothing in this record overcomes this presumption, we decline to award the State costs.

Therefore, we affirm.

FACTS

The Thurston County Superior Court issued a no contact order against Nicholas Bajardi, protecting Erin Roblin, in November 2014. Bajardi had previously been convicted of violating a no contact order.

On November 2, 2016, Officers Lett and Rodriguez were called to a wooded area on report of a suspicious vehicle that might have been trespassing. When the officers arrived, they heard both a male voice and a female voice. The officers walked towards the vehicle, approaching it from different angles. While Officer Rodriguez spoke with Bajardi, Officer Lett stopped and talked to the woman in the van. Both officers testified that the woman in the photograph on Roblin's driver's license was the same woman they contacted on November 2, 2016.

After speaking with Roblin, the officers detained Bajardi for further investigation. After being handcuffed, Bajardi told officers, "I wasn't talking to

her."[1] Officer Rodriguez confirmed that Bajardi had a Department of Corrections warrant for escaping community custody.

The trial court admitted the driver's license over Bajardi's objection. After a bench trial, Bajardi was found guilty of felony violation of a no contact order. Bajardi appeals.

## ANALYSIS

### I. Driver's License Admission

Bajardi contends the trial court abused its discretion by admitting a certified copy of Roblin's driver's license into evidence.

We review a trial court's evidentiary decisions for abuse of discretion.[2] The trial court's "decision to admit or exclude business records is given great weight and will not be reversed unless there has been a manifest abuse of discretion."[3] "Discretion is abused if it is exercised on untenable grounds or for untenable reasons.'"[4]

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[5] The

---

[1] Report of Proceedings (Feb. 14, 2017) at 56.

[2] State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).

[3] State v. Ziegler, 114 Wn.2d 533, 538, 789 P.2d 79 (1990).

[4] State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007) (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

[5] ER 401.

trial court "has wide discretion in balancing the probative value of the evidence against its potentially prejudicial impact."[6]

In State v. Mares, Mares appealed his conviction for violating a no contact order against Brittany Knopff.[7] The State introduced a copy of Knopff's driver' license to prove she was the person named in the order.[8] This court concluded the license was admissible as a public record, "and the custodian who authenticated the copy provided no testimonial statements in doing so."[9] The court reasoned

> [b]usiness and public records are generally admissible absent confrontation because, *having been created for* the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, they are not testimonial.[10]

The certification here, like in Mares, attests to the authenticity of a public record, and the trial court admitted the document as self-authenticating. Officers Lett and Rodriguez both testified that the woman in the license photo was the same woman that was in the vehicle when they arrested Bajardi. The certified driver's license is relevant evidence that helped determine the person in the no contact order was the same person at the scene when police arrested Bajardi.

---

[6] Stenson, 132 Wn.2d at 702.

[7] 160 Wn. App. 558, 560, 248 P.3d 140 (2011).

[8] Id. at 561.

[9] Id. at 565.

[10] Id. at 564 (emphasis added).

In Bajardi's reply brief, he clarifies that he is not challenging the authenticity of the driver's license, nor is he claiming his right to confrontation was violated. Instead, Bajardi argues that it was inadmissible "because the *contents* of the driver's license do not meet the definition of a 'public record' under RCW 5.44.040."[11] His narrow argument fails.

RCW 5.44.040 provides:

> Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state or any other state or territory of the United States, when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals, *shall be* admitted in evidence in the courts of this state.[12]

Our Supreme Court has observed:

> "In order to be admissible, a report or document prepared by a public official *must contain facts and not conclusions* involving the exercise of judgment or discretion or the expression of opinion. *The subject matter must relate to facts which are of a public nature*, it must be retained for the benefit of the public and there must be express statutory authority to compile the report."[13]

A driver's license is a document prepared by a public official and contains facts of a public nature, including the name and photograph of the license holder. A driver's license does not contain conclusions involving the

---

[11] Reply Br. at 7.

[12] (Emphasis added.)

[13] State v. Monson, 113 Wn.2d 833, 839, 784 P.2d 485 (1989) (emphasis added) (quoting Steel v. Johnson, 9 Wn.2d 347, 358, 115 P.2d 145 (1941)).

exercise of judgment or discretion or the expression of opinion.[14] Inconsistent with his acknowledgment that he does not challenge the authenticity of the driver's license,[15] he suggests the State failed to present evidence that the public employee who entered the information into the Department of Licensing database "could authenticate the accuracy of the information."[16] But because the driver's license itself is properly authenticated, it is admissible as a public document.

Bajardi relies heavily on Tire Towne, Inc. v. G & L Service Co., where Division Two of this court held an affidavit filed with the county assessor containing a list of property identified by the taxpayer should not have been admitted as a public record, in part because the deputy assessor who certified the record had neither prepared the document nor had firsthand knowledge, thus, the document lacked proper authentication.[17] Additionally, the tax filing was offered for the purpose of proving the alleged claim that the taxpayer owned the property listed and was therefore hearsay. But here, the driver's license was used solely for the purpose of allowing deputies to identify the woman at the scene. A photograph maintained as part of a public record is

---

[14] Id.

[15] Reply Br. at 2 ("Mr. Bajardi is not challenging the authenticity of [the driver's license], nor is he claiming his right to confront the witnesses against him was violated.").

[16] Id. at 11-12.

[17] 10 Wn. App. 184, 190, 518 P.2d 240 (1973).

properly authenticated and admitted as a public record when certified by an official of the agency maintaining that record.[18]

We conclude the trial court did not abuse its discretion in admitting the certified copy of a driver's license as a self-authenticating public record.

### Sufficiency of the Evidence

Bajardi challenges the sufficiency of the evidence supporting his conviction.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[19] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[20] "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence. "Furthermore, the specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical

---

[18] See generally State v. Courser, 199 Wash. 559, 92 P.2d 264 (1939); State v. Kelly, 52 Wn.2d 676, 328 P.2d 362 (1958); State v. Lee, 87 Wn.2d 932, 558 P.2d 236 (1976) (photos maintained by the prison properly admitted as public record upon certification by prison official).

[19] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[20] Id.

probability."[21] "Credibility determinations are for the trier of fact and cannot be reviewed on appeal."[22]

Violation of a no contact order "is a class C felony if the offender has at least two previous convictions for violating" a no contact order.[23] Bajardi concedes the State presented sufficient evidence of prior violations but argues the State presented "no evidence" that the woman at the scene was the same woman described in the no contact order.[24]

Here, police officers identified the woman by the photo in her driver's license to establish the woman from the scene was the same woman in the no contact order. The trial court found the officers credible. The information from the no contact order matched the information in Roblin's driver's license. The trial court reviewed and weighed the evidence presented in its oral and written findings of fact. Viewing this evidence in the light most favorable to the State, any rational trier of fact could have found Bajardi guilty of violating the no contact order against Roblin.

We conclude the State presented sufficient evidence to convict Bajardi of violating the no contact order.

---

[21] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

[22] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

[23] RCW 26.50.110(5).

[24] Appellant's Br. at 17.

### III. Appellate Costs

Bajardi asks this court to deny the State its costs on appeal.

RCW 10.73.160(1) gives appellate courts discretion to decline to impose appellate costs on appeal.[25] Under State v. Sinclair, there is a presumption that indigency continues unless the record shows otherwise.[26]

Here, the trial court found that Bajardi is indigent. Nothing in this record overcomes this presumption. Thus, an award of costs would be inappropriate.

We affirm.

WE CONCUR:

Trickey, J

---

[25] State v. Nolan, 141 Wn.2d 620, 629, 8 P.3d 300 (2000).

[26] 192 Wn. App. 380, 392-93, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016).