[No. 5413–1.  Division One.  April 24, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. ELWOOD JAY DAW, *Appellant.*

*Ronald J. Crippen,* for appellant (appointed counsel for appeal).

*Patrick R. McMullen, Prosecuting Attorney,* for respondent.

PER CURIAM.—Elwood Jay Daw appeals from a conviction of driving a motor vehicle while intoxicated.

The sole issue is whether Daw was denied due process of law and whether the case should have been dismissed

because the arresting officer did not complete the Breathalyzer test.

On September 26, 1976, Daw was stopped and arrested for driving while under the influence of intoxicants. At the police station, Daw was informed of his rights and allowed to contact an attorney, who advised him to take the Breathalyzer test. After Daw had been instructed for the seventh time on how to operate the Breathalyzer machine, he made two attempts to take the test by simply putting his mouth on the mouthpiece of the machine. The officer instructed Daw an eighth time and subsequently, on his third attempt, he gave a short puff and the green light came on, indicating that the chamber contained 52.5 cubic centimeters of air. Daw then stopped blowing into the machine and stated, "There, the light came on and that's it." The trooper did not, however, analyze the sample because Daw had not blown into the machine as instructed. The officer testified that he had been instructed that, in order to obtain a valid Breathalyzer reading, the person had to blow continuously into the machine for approximately 5 to 7 seconds. Daw was permitted a fourth attempt at the Breathalyzer machine, but again, merely "put his lips to the mouthpiece and did not blow into the machine at all." The trooper did not attempt to administer the Breathalyzer a fifth time.

Daw contends that he was denied due process of law and the case should have been dismissed because the State failed to preserve evidence which may have tended to negate his guilt. He concedes that his failing to blow hard enough to activate the Breathalyzer machine may have amounted to a nonverbal refusal. *See Woolman v. Department of Motor Vehicles,* 15 Wn. App. 115, 547 P.2d 293 (1976). He argues, however, that when the Breathalyzer machine was activated by the green light, the officer had a duty to turn the machine to "analyze" so that a reading could have been obtained. Daw contends that the failure to obtain a reading was a suppression of evidence and, accordingly, a violation of due process of law as defined by

*Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). We disagree.

■ In *State v. Wright,* 87 Wn.2d 783, 786–87, 557 P.2d 1 (1976), the court stated:

> Due process imposes certain obligations on law enforcement and investigatory agencies to insure every criminal trial is a "search for truth, not an adversary game". . . . One such constitutional obligation, the disclosure of evidence to the defendant, is well established. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." . . .
>
> Under the rule governing suppression of evidence, the circumstances surrounding the nondisclosure, including the motivation of the party responsible for the suppression, are irrelevant. . . . This is so because the constitutional requirement is "not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." . . . The United States Supreme Court has not attempted to precisely define "material evidence" or the degree of prejudice which must be shown by the defendant to make out a violation. . . . Other courts have defined materiality quite broadly. . . . Of course, neither the police nor the prosecution are to decide for the defense what is favorable or material evidence. . . . If the defense has established that the suppressed evidence is material, the court may conclude that due process has been denied and that the error can be corrected by a new trial at which the defendant will have full access to the evidence.

(Citations omitted.) An investigative agency has the duty to preserve evidence for disclosure. *See State v. Wright, supra; United States v. Bryant,* 439 F.2d 642 (D.C. Cir. 1971). In *People v. Hitch,* 12 Cal. 3d 641, 527 P.2d 361, 117 Cal. Rptr. 9 (1974), the court held that:

> those parts of the Breathalyzer which may be profitably retested prior to trial were material evidence on the issue of guilt or innocence of the charge of driving under the influence of alcohol, that due process requires such evidence be disclosed by the prosecution, and thus that the

investigative agency has a duty to preserve the evidence for disclosure. This holding was based on a determination that there was a "reasonable possibility" that the destroyed evidence was favorable to the defendant.

(Footnote omitted.) *State v. Wright, supra* at 789.

We recognize the rule stated in *Brady* but find it inapplicable to the facts of this case. The arresting officer testified that he did not complete the Breathalyzer test because Daw had not blown into the machine for 5 to 7 seconds as instructed. A state's expert testified that:

the Breathalyzer is designed to analyze a fixed amount of deep lung air, that being alveolar air that is in the lower part of the lung. In order to collect that, it is not necessary that a person take a deep breath when he blows into the machine, but it is necessary the person blow into the machine for a period of five to seven seconds to empty his lungs so we are collecting that last bit of breath of air which is alveolar air, which is the principle that the Breathalyzer is designed and set up to analyze and work on.

The expert also testified:

[I]n order to collect this deep lung air . . . we have a sample chamber which holds 52.5 cubic centimeters of breath at given temperature. In this case it is 45 to 50 degrees centigrade. In order to collect that sample of the deep lung alveolar air that we need, the chamber, the sample chamber has two vent holes in it, one on the front and one on the back side. . . . there is a piston . . . that goes up and down in the sample chamber. . . . The piston at the bottom of the cylinder, before the person blows into it, at this time the red or empty light is on. As the person blows into it, the piston goes up to the top and makes an electrical contact or a magnet up there, and at that point there is 52.5 cubic centimeters of breath in the machine and the green light comes on, the full light. Then from then on any breath that comes into the sample chamber is forcing the first breath out of the sample chamber so that we collect that fixed deep lung air.

This testimony indicates that the officer did not complete the test because a reading would not have been reliable. As stated in 2 R. Erwin, *Defense of Drunk Driving Cases* § 22.02 (3d ed. 1977), the author states:

> The subject should be told to blow as long as possible in order to be sure that the sample is from the deep lung area of the subject and thus an Alveolar air sample. Regardless of the amount of air blown into the machine, the vent system disposes of all but the last section of the predetermined sample chamber volume of 52.5 cc. If the subject does not, or cannot, produce a deep lung Alveolar air sample, and in reality only passes mouth air into the machine, then a false reading will be obtained. This reading may be falsely high or low depending upon the contents of residual hydrocarbon material present in the mouth of the subject at the time of the test.

The State has no duty to produce unreliable and incompetent evidence. Nor is the State obliged to "manufacture evidence which might conceivably be beneficial to a defendant. . . . The rationale of *Brady* does not apply to evidence not in existence." *Turner v. Department of Motor Vehicles,* 14 Wn. App. 333, 335, 541 P.2d 1005 (1975). We find no due process violation.

Further, even if we accepted Daw's contention that the State has a duty to complete the Breathalyzer test even though the results would have been unreliable, there is no due process violation unless "there was a reasonable possibility that the evidence destroyed by the police . . . was material to guilt or innocence and favorable to [the defendant]." *State v. Wright, supra* at 789–90. *See People v. Johnson,* 74 Cal. App. 3d 205, 141 Cal. Rptr. 418 (1977); *People v. Vera,* 62 Cal. App. 3d 293, 132 Cal. Rptr. 817 (1976); *People v. Harris,* 62 Cal. App. 3d 859, 133 Cal. Rptr. 352 (1976). Daw has made no showing that the results of an unreliable Breathalyzer test would have constituted favorable evidence or would have been probative in any respect.